

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Brad Pruitt<br>Equian<br>9390 Bunsen Parkway<br>Louisville, KY 40220 |
| **Electronic copy provided to:** | Daniel Gibson |

| | |
|---|---|
| **Entity:** | Equian, LLC<br>Entity ID Number 3589901 |
| **Entity Served:** | Equian LLC |
| **Title of Action:** | Lisa Coffey vs. Equian LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Jefferson County Circuit Court, KY |
| **Case/Reference No:** | 18-CI-007353 |
| **Jurisdiction Served:** | Kentucky |
| **Date Served on CSC:** | 12/27/2018 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Marilyn "Linsey" Shrewsbury<br>502-366-6456 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

EXHIBIT A

| AOC-E-105 Sum Code: CI | | |
| Rev. 9-14 | | Case #: **18-CI-007353** |
| Commonwealth of Kentucky | | Court: **CIRCUIT** |
| Court of Justice    Courts.ky.gov | | County: **JEFFERSON Circuit** |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |



*Plantiff,* **COFFEY, LISA VS. EQUIAN LLC**, *Defendant*

TO: **CORPORATION SERVICE COMPANY**
**421 WEST MAIN STREET**
**FRANKFORT, KY 40601**

Memo: Related party is EQUIAN LLC

The Commonwealth of Kentucky to Defendant:
**EQUIAN LLC**

 You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Davis L. Nicholson*
Jefferson Circuit Clerk
Date: **12/19/2018**

<div style="border:1px solid">

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20 _____ .

_____
Served By

_____
Title

</div>

Summons ID: 137402710025193@00000892613
CIRCUIT: 18-CI-007353 Certified Mail
COFFEY, LISA VS. EQUIAN LLC



Page 1 of 1
EXHIBIT A



*eFiled*

Package:000002 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000002 of 000082

<div style="text-align:center">

**COMMONWEALTH OF KENTUCKY**
**JEFFERSON CIRCUIT COURT**
**DIVISION _____**
**CAUSE NUMBER _____**
*Electronically Filed*

</div>

LISA COFFEY                                              **PLAINTIFF**
423 WISTERIA AVE
LOUISVILLE, KY 40222


v.                              **VERIFIED COMPLAINT**


EQUIAN LLC
9390 BRUNSEN PARKWAY
LOUISVILLE KENTUCKY 40220                    **DEFENDANT**


Serve:
**CORPORATION SERVICE COMPANY**
**421 WEST MAIN STREET**
**FRANKFORT KENTUCKY 40601**


<div style="text-align:center">

*****

</div>

Comes the Plaintiff, Lisa Coffey, (hereinafter "Ms. Coffey" or "Plaintiff"), and for her

cause of action against the Defendant Equian LLC (hereinafter "Equian" or "Defendant") states

as follows:

<div style="text-align:center">

**JURISDICTION AND VENUE**

</div>

1.        At all times relevant to this cause of action Plaintiff was a resident of Jefferson

County, Louisville Kentucky; was employed by Equian LLC as a Director of Benefits

Compensation & HR Shared Solutions and worked out of Equian LLC's Jefferson County

Kentucky office.

1

<div style="text-align:center">

EXHIBIT A

</div>

Package:000003 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000003 of 000082

2.      The Defendant Equian LLC is Foreign Limited Liability Company who operates in several physical locations across the United States of America including, but not limited to, Jefferson County Kentucky.

3.      Ms. Coffey's causes of action are brought pursuant to the Kentucky Civil Rights Act, KRS 344 *et seq.*, and the common law of the Commonwealth of Kentucky in addition her damaged exceed the threshold requirement of five- thousand dollars ($5000.00) therefore this court has proper jurisdiction over the matter.

## FACTUAL ALLEGATIONS

4.  On or around October 23, 2017 Ms. Coffey was offered and accepted employment with Equian LLC ("Equian"), as the Director of Benefits, Compensation & HR Shared Solutions.

5.  Ms. Coffey accepted the above listed position due to the promise of growth in her position and autonomy in decision making as a director.

6.  Ms. Coffey took her position at a pay cut from her previous place of employment and from other potential employers.

7.  Throughout the course of her employment with Equian Ms. Coffey was subjected to a severe and pervasive hostile working environment.

8.  Ms. Coffey realized almost immediately after her employment began with Equian that she was the subject and/or target of Connie Janowski ("Connie" or "Ms. Janowski"), who was at the time another Human Resource Director employed by Equian, ridicule and abuse.

2

Package:000004 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000004 of 000082

9. Ms. Janowski did in a pervasive and severe manner alter the terms and conditions of Ms. Coffey's job role and responsibilities by arbitrarily applying policies and or procedures not enforced or used against Ms. Coffey but not against other male employees and employees under the age of forty (40).

10. Ms. Janowski would specifically and publically admonish and humiliate Ms. Coffey for no actual reason.

11. Ms. Janowski would attempt to punish Ms. Coffey for exercising her judgment in her position or gaining any positive recognition for her job performance.

12. Ms. Janowski would report Ms. Coffey's day to day activities and or movements to other members of management without directive and in order to sabotage Ms. Coffey by painting a false light on Ms. Coffey's ability to perform her job role and or function.

13. All of the above describes in part the day to day level of harassment and hostility Ms. Coffey felt working for Equian with Ms. Janowski.

14. Despite the daily hostility Ms. Coffey was exposed too she worked very hard to complete the numerous tasks she was assigned to complete.

15. Ms. Coffey came in early and stayed late on multiple occasions.

16. Ms. Coffey worked weekends and holidays on multiple occasions.

17. In February of 2018 Ms. Coffey received an employee performance evaluation, a copy of which is attached hereto as Exhibit "1".

18. This evaluation shows that in February of 2018 Ms. Coffey, who had been working for Equian for a period of approximately four months, was performing well above average.

3

EXHIBIT A

Package:000005 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000005 of 000082

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

19. From February to June of 2018, while the daily pattern of hostility, arbitrary application of rules and intense scrutiny continued, no negative feedback was given to Ms. Coffey related to her job performance.

20. Ms. Coffey did not receive negative feedback during that period of time because she was performing at an excellent level.

21. From February to June of 2018 Ms. Coffey was assigned the most projects out of any other Human Resource Director employed by Equian.

22. One such project was a massive undertaking of transferring ninety- million ($90,000,000.00) dollars into a new 401(k) plan for Equian and its Employees.

23. On June 14, 2018 Ms. Coffey received an email from her supervisor TJ Fjelseth ("Mr. Fjelseth" or "TJ"), prior to meeting with him for their weekly one-on- one.

24. Attached to Mr. Fjelseth's email was a two page memo, a copy of which is attached hereto as Exhibit "2", and was an assault on Ms. Coffey's ability to perform her job.

25. It was the next day, June 15, 2018, that Ms. Coffey met with Mr. Fjelseth and wanted to discuss the memo he sent the previous day.

26. Based on the language used in the memo and the style of writing Ms. Coffey believes that it was not authored by her supervisor, TJ, but instead was authored by her tormenter Connie Janowski.

27. Mr. Fjelseth ("TJ") stated the following during the course of the meeting which occurred between himself and Ms. Coffey on June 15, 2018:

    a.   TJ stated he was leaving the company the next day and wasn't going to go through the memo. There was no reason to.

4

Package:000006 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000006 of 000082

b.  TJ stated it didn't matter how much Ms. Coffey "touched" (meaning helped) employees.

c.  TJ discussed Prevention Cloud, a product used by Equian's Broker, and Ms. Coffey told TJ how much time she was dedicating to fixing the department.

d.  Both TJ and Ms. Coffey discussed the incredible amount of projects Ms. Coffey had been assigned too, including but not limited to:

    i.  Moving a $90,000,000.00 401k from one vendor to another.

    ii.  Reviewing the Audit for the same.

    iii.  Preparing to present to and train all applicable employees on the Paylocity system, which was not being implemented, scheduled in August.

    iv.  TJ and Ms. Coffey discussed how prior to this meeting, Ms. Coffey recently concluded the one objective she was told she must complete on the day she was hired- the launching and implementing of the "Q" artificial intelligence project.

    v.  Ms. Coffey and TJ discussed how after Ms. Coffey did successfully launch and implement the Q project, TJ gave everyone else paid time off, except Ms. Coffey and in fact TJ never even thanked Ms. Coffey for the work she did on the project.

    vi.  In response to the above assertion TJ stated that he did not reward Ms. Coffey for her work because she did it all herself.

    vii.  Ms. Coffey responded by stating that she was forced to do the work herself because no one else would.

5

Package:000007 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000007 of 000082

> viii.   TJ told Ms. Coffey that he "spoke with her peers" regarding her ability to work with a team and ended the conversation.

28. Ms. Coffey, devastated, humiliated and emotionally drained decided to reach out to the peers mentioned by TJ in the above relayed conversation specifically Arlene and Marietta Thompson to inquire as to what they perceived the issue to be with Ms. Coffey.

29. Both Arlene and Marietta made it clear that TJ never spoke with them, nor did they make complaints to anyone in management related to Ms. Coffey or her ability to perform her job functions.

30. Both Arlene and Marietta believe Ms. Coffey to be an incredibly skilled and excellent worker and resource to Equian.

31. On the same afternoon, June 15, 2018 Ms. Coffey went to speak with Daniel Gibson, CCO in order to make a complaint about the treatment she was receiving, the conversation she had with TJ, and her fears that her harasser, Connie Janowski, was attempting to push Ms. Coffey out of her position.

32. During this meeting Mr. Gibson instructed Ms. Coffey to go talk to Connie Janowski ("Ms. Janowski") about her complaints.

33. Ms. Coffey refused to do so and re-asserted that Connie was the problem.

34. Mr. Gibson then advised Ms. Coffey to go and speak with Shankar Narayanan, COO.

35. Ms. Coffey emailed Mr. Narayanan the same afternoon, a copy of which is attached hereto as Exhibit "3" and asked to speak with him.

36. Mr. Narayanan forwarded the email to Jeff Martin CFO and told Ms. Coffey Mr. Martin would be handling HR matters, Ms. Coffey then exchanged emails with Mr. Martin and forwarded him TJ's "Memo". (See Exhibit "4")

6

Package:000008 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000008 of 000082

EXHIBIT A

37. Jeff and Ms. Coffey met on June 19, 2018.

38. Ms. Coffey informed Mr. Martin of the harassment she was receiving at the hands of

    Connie Janowski while Ms. Coffey was juggling more projects than any other HR

    Director.

39. Ms. Coffey recalls the conversation between herself and Mr. Martin as consisting of the

    following:

    a.  Ms. Coffey explained to Mr. Martin that she was fixing a huge problem with

        Insurance overbilling: Specifically, Anthem was not reconciled for over a year

        and there was roughly $100,000 in overpayments made to Anthem.  Trover

        associates were still under Trover and they were on Equian.   COBRA recipients

        who were not paying were still covered and should not have been.  Ms. Coffey

        worked with Anthem to have accounts fixed and refunded.

    b.  Ms. Coffey explained to Mr. Martin that she was fixing a huge issue with

        Prevention Cloud, as mentioned above, in actively working to fix and manage the

        program.

    c.  Ms. Coffey told Mr. Martin how she completed a hold harmless agreement and

        moved the Health Spending agreements to Business Solver so Equian would not

        continue having issues with accounts being closed and money kicked back as

        Roughly 100 employees ongoing had not accepted the terms and agreements and

        their accounts had been closed prematurely.

    d.  Ms. Coffey told Mr. Martin about the 401k testing issues and how she was going

        line by line through the audit.

7

EXHIBIT A

Package:000009 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000009 of 000082

    e.  Ms. Coffey told Mr. Martin about how she was moving the 401k to One America and handling all the paperwork, building the website and working on ensuring the data from the Standard was going to come over clean.  There was no feed and Ms. Coffey and her team were doing everything manually in addition to pulling the newest company Omni Claim on benefits and conducting open enrollment with the, bringing them on 401k and payroll for  September 1, 2018.

    f.  Ms. Coffey told Mr. Martin how she was responsible for the "Fitness on the Floor" initiatives in Louisville and Southfield

40. The conversation concluded with Ms. Coffey telling Mr. Martin how she felt singled out, mistreated, isolated, and misused by Ms. Janowski.

41. Mr. Martin asked Ms. Coffey if she wanted to work at Equian.

42. Ms. Coffey told Mr. Martin that she did want to work at Equian and then proceeded to ask Mr. Martin if she could report to him directly.

43. Mr. Martin told Ms. Coffey that it would not be possible for her to report to him directly but that she had nothing to worry about that the write up- or memo presented to her by TJ meant nothing and could not be used against her.

44. Mr. Martin said that the write up "did not exist".

45. The Following timeline was created by Ms. Coffey starting in June of 2018 when Connie Janowski became significantly more abusive, severe and hostile toward Ms. Coffey, a copy of the entire journal or recollection is attached hereto as Exhibit "5":

    a.  "June 8th, Connie sends an email to several of us and discusses onboarding plans. Connie is not our manager – the assumption is Connie will be the interim manager." [after TJ leaves].

8

EXHIBIT A

Package:000010 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000010 of 000082

b.  "Several HR Directors are upset by this and we do not want to report to her. Connie has her favorites. Several Directors feel we should send a singed letter to Scott Mingee, CEO, and tell him this or drive up there."

c.  "On June 1st, Connie sent me an email about getting a birthday card for Nancy Moody, part time fitness trainer. I was in NY. I had reached out to Liz and Liz had a card. When I returned to Louisville, I had muffins/fruit and gave Nancy a card with a $25 gift card. I sent an email to Louisville saying come by for a belated birthday" a copy of the email is attached hereto as Exhibit "6"

d.  "June 25th – Connie emails me asking where the onboarding plan is for Celeste. I tell her she said anyone in May and she replied she wants one anyway. This is exactly what I told Jeff Martin what would happen. I go ahead and do it." A copy of the email is attached as Exhibit "7"

e.  "On June 28th, I sent an email stating I would be working from home. At the beginning of the week there was an F1 tornado that hit and took down a tree at my home and I needed to have the tree removed and my hvac unit fixed. Connie replied within 3 minutes asking who was going to handle my walk in traffic since my 2 employees were out. This comment made no sense since I have 17 locations cross the US plus remote employees. I replied Travis White, Ashley and Marietta were aware. Connie emailed Marietta Thompson, HR Director, on the side Marietta and asked if it was ok that I took the day off to deal with personal problems. This was completely inappropriate and unprofessional for her to email a peer. No one else is expected to have a back up and I had access to email and phone." Copies of the emails are attached collectively as Exhibit "8" (Also

9

EXHIBIT A

included in Exhibit 8 is the message sent to Jeff Martin by Ms. Coffey in which she forwards Ms. Janowski's email to Mr. Martin and complains about the treatment she is receiving).

f.   "On June 29th, I return to work and we are slammed with emails about Prevention Cloud. Employees are very upset. Celeste is out of town and I have to do payroll. Michael an employce comes in and talks about his medical bills. This is about the 4th or 5th time he has come to the office. Then, I called Jen Mattingly and we talked for a while regarding prevention cloud and waiving the coaching calls. I received an email from Connie at 953 am saying I was rude and short with associates. I emailed Connie back and asked how I was rude and she never replied. She would not tell me how or who I was rude to. She did not reply, I sent the email to Jeff Martin because I just couldn't take it anymore. I am completely exhausted at this point. He tells me to work it out with her." A copy of the email is attached hereto as Exhibit "9".

g.   "On July 2nd I requested PTO. Connie replied "I want to ensure you have a fully prepared back up this time please. Who else is out those dates? Are we doing anything for Woburn on those dates? This to me means that I didn't prove proper coverage last time. I was getting pretty frustrated and again I felt picked [on]. I didn't go as I was afraid I would get terminated. She said it is probably best I didn't go." Copies of the emails are attached hereto as Exhibit "10".

h.   "July 9th Liz Fulton receives a complaint from Brianne Clark, black female, from Southfield. The complaint was about a write-up she signed and felt she shouldn't have. She was complaining about her Supervisor (Maria Cooke) and her HR

10

EXHIBIT A

Manager (Daniel Smith). Liz came to me and asked what to do. I told her that she should take this to Connie as Daniel reports to her and she should investigate."

i. "July 13th, I received a call from Brianne and she said no one had contacted her. I apologized and told her Connie was in meetings all week but Liz brought the concern to her. I assured her Connie would follow up. I email Connie on July 15th and told her Brianne called. Later during the week, I saw Connie outside and asked if she followed up with her. Connie said she took care of it, she went on to say how employees say things about HR, etc. I said I understood."

j. "Connie has an offsite meeting, with all managers and directors on July 17th, 18th, 19th. At the meeting, Connie brings up working from home and says we as a company should be more flexible. I am completely taken back because of how she treated me after the tornado hit my property. I assume she is talking about another department but not Human Resources. During the meeting, Travis White and Daniel Smith share how she sent them birthday presents and how they have never worked for such a great boss. She is treating them different than the rest of the team. They both get descriptive on the presents she has purchased. She shipped Daniel a present to his home.

k. "The rest of the HR team can't understand why we are doing this exercise when she is an interm boss, we are all busy and we know about the cost reductions."

l. "July 20th, the day after the retreat Travis tells me how he will be working from home on Fridays. He said that Daniel was cool with it and they agreed he could

11

EXHIBIT A

do it.  I said it must be nice because you see when I work from home how I am treated.  I am refencing the email Connie sent about the "walk-ins"."

m. "July 20th, I asked Carrie for her advice on how to handle the compliance testing refunds.  Carrie replies there is no need for us to discuss and provides step by step email advice on how to handle.  Connie sends an inappropriate note about how to do this and do it correctly.  Completely uncalled for especially with a peer.

n. "July 20th is Liz's birthday and I get an email at 630 am from Connie if I did anything for Liz's birthday.  I respond yes, I did purchase a card, muffins and fruit.  Connie comes to our 10 am meeting late.  I am on the phone with One America.  Connie storms off and says she is busy.  I email her and state I have a card for Liz's birthday, can she sign it and I will walk over to her building.  She replies it would have been nice had I had it at the meetings that week.  She never signs the card so I give it to Liz at the end of the day.  She did not purchase any gift for Liz, decorate or make cupcakes.

o. "July 26th, I received a call from Brianne.  I called her back at 612 pm and we spoke for 21 minutes.  Brianne went on to tell me that no one had contacted her and Dan was trying to talk to her about it.  She said she told him I am not talking to you about this as she has a concern with him.  He said to come to her office and he wanted to talk to her about something else.  She went to the office and he brought up the situation and she walked out.  She said Connie has never contacted her and Dan was following up on her complaint about him. She went into further details about Maria Cooke stating the employees had ghettoness.  I was completely shocked.  I told her she could call Jeff Martin (Connie's boss), Tony

12

EXHIBIT A

Package:000014 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000014 of 000082

Kern (local vp) or she should call the Ethics Hotline. The next day I went to work

and spoke to Marietta Thompson, HR Director, and I explained the situation. She

said she should go to the hotline so they could do a proper investigation. I

reached out back to Brianne and told her to go to contact the hotline."

p. "Brianne sent Liz an email on July 29th about our conversation."

q. August 15th I spoke with Brianne and she told me no one has contacted her. She

said Maria Cooke was contacted because she heard Maria talking to someone and

she could figure out what they were talking about and it was the situation. My

understanding is the ethics hotline gave Connie the investigation. Connie

basically failed to investigate, allowed her employee to investigate himself and

then when the concern went to the hotline she investigated it herself. The hotline

didn't realize the complaint now included Connie.

46. Travis White, is an HR Manager who has little to no experience yet along with Daniel

Smith, a newly promoted HR Director is given preferential treatment by Ms. Janowski as

outlined above in Ms. Coffey's recollection of events which unfolded June through

August of 2018. See Exhibit "11" posts from social media showing the close relationship

between Ms. Janowski and Mr. White.

47. On or around August 7, 2018 all of the directors including Ms. Coffey were made aware

of the fact that their department needed to cut costs in order to meet monetary goals.

48. The directors brainstormed ideas on how to accomplish this.

49. After TJ Fjelseth left his position and Ms. Janowski was named "interim CHRO" no

more collaborative conversations were held regarding the budget crisis.

13

EXHIBIT A

Package:000015 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000015 of 000082

50. Ms. Janowski used the budget crisis as an opportunity to devise and carry out a plan to get rid of, via termination, female employees over the age of 40.

51. In fact, Ms. Coffey was at the top of Ms. Janowski's chopping block.

52. In fact, Travis White, a male under the age of forty (40), was told by Ms. Janowski, at least one full week in advance of the action, that Ms. Coffey would be terminated.

53. Mr. White was told Ms. Coffey was going to be terminated due to her "poor performance".

54. Mr. White then told all of Ms. Coffey's associates, who informed her that she was going to be terminated for her "poor performance".

55. Prior to having knowledge of her impending termination, on or around August 12, 2018, Ms. Coffey filed a complaint of discrimination related to age and gender, and hostile work environment to the EEOC. See Exhibit "12" EEOC right to sue letter.

56. When Ms. Coffey was terminated, on August 16, 2018, in front of Mr. White it was done so under the pre-tense of a "reduction in force and that her position was being eliminated", Ms. Coffey received her letter of termination the following day on August 17, 2018. See Exhibit "13".

57. Ms. Coffey is over the age of forty and a female.

58. All of the individuals who were subject the pre-textual "reduction in force" operation carried out by Connie Janowski were females over the age of forty (40).

59. All of the individuals who were subject to the pre-textual "reduction in force" operation carried out by Connie Janowski had more training and experience than the individuals not subject to the same "reduction in force".

Package:000016 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000016 of 000082

14

60. Daniel Smith and Travis White were not subject to the reduction in force and are still employed at Equian.

61. Ms. Coffey was subjected to emotional damage, embarrassment and humiliation regularly at the hands of Connie Janowski, and a former Equian Employee TJ Fjelseth.

62. Ms. Coffey was treated differently to her detriment than other male employees and employees under the age of 40.

63. Ms. Coffey has suffered and will continue to suffer lost wages, mental anguish, pain and humiliation damages.

## FIRST CAUSE OF ACTION : DISCRIMINATION BASED ON AGE

64. That Plaintiff hereby incorporates each and every allegation contained in  paragraphs 1 through 63 above, as if fully set forth with particularity herein;

65. That KRS 344.040(1)(a) provides, in relevant part, "[i]t is an unlawful employment practice for an employer…to fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's…*age forty (40) or over.*" (Emphasis added);

66. That to demonstrate a *prima facie* case of discrimination on the basis of age, Plaintiff must show she: (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) received disparate treatment from a similarly situated younger person. *Flock v. Brown-Forman Corp.*, 344 S.W.3d 111, 114 (Ky. Ct. App. 2010);

15

EXHIBIT A

Package:000017 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000017 of 000082

67. That Plaintiff, currently, and during the time at issue in this case, is over the age of 40, and thus, her discharge, by Defendant Equian LLC, was at least in part, because she is over the age of forty (40), in violation of KRS 344.040;

68. That Plaintiff, having shown she was treated differently because she is over the age of forty (40), has suffered, and will continue to suffer, monetary losses in the form of lost wages, humiliation, embarrassment, mortification of feelings, and any and all fringe benefits accrued to Plaintiff during her employment with Defendant Equian LLC is a member of a protected class for the purposes of KRS 344.040;

## SECOND CAUSE OF ACTION: DISCRIMINATION ON THE BASIS OF SEX/ GENDER

69. The Plaintiff hereby incorporates herein each and every allegation of paragraphs 1 through 68 above, as if fully set forth with particularity herein.

70. The action by the Defendant Equian LLC and its agents Connie Janowski, Travis White, Daniel Smith among others is discriminatory under KRS 344.040, which  specifically prohibits discrimination of any kind against an individual because of their sex or gender.

71. Ms. Coffey is a female and thus a member of a class protected by KRS 344.040.

72. That Ms. Coffey was treated differently, to her detriment and has suffered damages because of her gender.

73. Defendant Equian LLC through the acts of its agents committed an unlawful practice of discrimination against an individual because of such individual's sex/gender, under KRS § 344.040.

74. Wherefore, the Plaintiff,  Ms. Coffey having shown that she was subjected to adverse

16

EXHIBIT A

Package:000018 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000018 of 000082

employment actions up unto and after her termination because of her gender , has suffered, and will continue to suffer, monetary losses based on humiliation, embarrassment, mortification of feelings, and loss of income, health insurance, as well as loss of pension benefits, and all benefits accrued by the Plaintiff during her time working for Equian LLC.

## THIRD CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT

75. That Plaintiff hereby incorporates herein each and every allegation of paragraphs 1 through 74 as if fully set forth with particularity herein;

76. That Plaintiff is a woman over the age of 40 and therefore, a member of a protected class;

77. That Plaintiff was subject to a daily pattern of unwelcome harassment, intimidation, and assaults perpetrated by the Defendant Equian LLC and its agents.

78. That the unwelcome harassment was based on Plaintiff's gender and age and perpetuated when Plaintiff reported the activities of Connie Janowski as illegal to other members of Equian's management team who took no steps to resolve Plaintiff's complaints.

79. That the unwelcome harassment was based on Plaintiff engaging in activity protected under KRS 344.

80. That the Plaintiff complained and reported the harassment she was forced to endure to her supervisor and to the individual she was told would be managing the HR department, Jeff Martin, to her detriment, as no actions were ever taken to correct or even investigate hostile work environment that Plaintiff had been forced to endure.

## FOURTH CAUSE OF ACTION: RETALIATION: KRS 344.280

81. Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 80 as if fully set forth with particularity herein;

17

Package:000019 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000019 of 000082

EXHIBIT A

82. That KRS 344.280(1) makes it an unlawful employment practice "for a person, or for two (2) or more persons to conspire: To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter;"

83. That Plaintiff was and did engaged in protected activity first in making complaints to her supervisors and managers and then in making a complaint to the Equal Employment Opportunity Commission for age and gender related discrimination;

84. That the exercise of Plaintiff's civil rights was known by Defendant Equian LLC.

85. That Plaintiff did report the discrimination that she was subjected to and that no action was taken to investigate those complaints.

86. That, thereafter the Defendant did take further employment action adverse to Plaintiff up into and including termination;

87. That there is a causal connection between the protected activity and the adverse employment action.

88. That Plaintiff, having shown a *prima facie* case of retaliation, has suffered, and will continue to suffer, monetary losses based on humiliation, embarrassment, mortification of feelings, and loss of income, and all benefits accrued by the Plaintiff during her employment with the Defendant

89. That the actions taken by the Defendant were due to Plaintiff's age and gender and are in violation of KRS 344, and establish a *prima facie* case of age and sex discrimination.

90. That Plaintiff, having shown that she was treated differently because of her age, and sex, to her detriment, has suffered, and will continue to suffer, monetary losses based on

18

EXHIBIT A

Package:000020 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000020 of 000082

humiliation, embarrassment, mortification of feelings, and loss of income, and all

benefits accrued by the Plaintiff during her employment with Defendant Equian LLC.

## **PRAYER FOR RELIEF**

91. The Plaintiff hereby incorporates herein each and every allegation of paragraphs 1- 90

above as willfully set forth with particularity herein.

92. WHEREFORE, Ms. Coffey, prays that this Court:

93. Declare Equian LLC's conduct in violation of Ms. Coffey's rights;

94. Award Ms. Coffey compensatory damages in such amounts as shall be proved at trial for

her economic and other losses;

95. Award Ms. Coffey damages in an amount to be proved at trial for the humiliation,

embarrassment, personal indignity, apprehension about her future, emotional distress, and

mental anguish, which the Defendant Equian LLC has caused.

96. Award Ms. Coffey punitive damages against Equian LLC  for the serious intentional

wrongs they committed against her, alleged herein above;

97. Award Ms. Coffey costs, interest, and attorneys' fees pursuant to KRS 344; and

98. Grant her such further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff, Ms. Coffey, demands a jury to try all issues triable by jury.



Respectfully Submitted,


/s/ Marilyn "Linsey" Shrewsbury
Marilyn "Linsey" Shrewsbury

19

Package :000021 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000021 of 000082

Samuel G. Hayward
Adams Hayward & Welsh
4036 Preston Highway
Louisville, KY 40213
(502) 366-6456
linsey@samhaywardlaw.com
*Counsel for Plaintiff*

Package:000022 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000022 of 000082

20

EXHIBIT A

## VERIFICATION

I, Lisa Coffey, hereby certify the above statements to be true and correct, to the best of my ability.

Executed in Jefferson County, Kentucky, this 11th day of December, 2018.

_____
Lisa Coffey

COMMONWEALTH OF KENTUCKY        )
                                )SCT.
COUNTY OF JEFFERSON             )

Sworn, subscribed to and acknowledged before me, a Notary Public, within and for the Commonwealth of Kentucky at large, by Linsey Shrewsbury, this 11th day of December, 2018.

My Commission Expires: Aug the 2021

Notary ID: 595149

_____
NOTARY PUBLIC
STATE AT LARGE

EXHIBIT A

Package:000023 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000023 of 000082

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT "1"

Package:000024 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000024 of 000082

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

# 2017 Annual Supervisory Evaluation

**Employee Name**
Lisa Coffey

**Position**
Director, Benefits, Comp, and HR Shared Services

**Hire Date**
10/23/2017

**Company Name**
Equian LLC (37926)

**Reviewer**
Fjelseth, Thomas

**Supervisor**
Fjelseth, Thomas

**Review Date**
02/09/2018

## Review items

Summary evaluation of skills and strengths in the following categories

**Leadership Customer Focus**
Acts as a role model of Equian's best customer service behaviors, demonstrates proactive action in anticipation of customer needs, considers customer perspective in making key decisions.

Comments from Employee
3 - Solid Performer
I feel I am working very hard to ensure we are providing outstanding customer service to our customer. I would say I am going above and beyond with benefits. I do need to provider more services with respect to compensation and utilize payfactors. I have to get a task force together to start working on job descriptions and compensation structures.

Comments from Reviewer
4 - Excellent Performer
In Lisa's short tenure she has demonstrated a strong orientation toward service excellence. Lisa joined the organization during Open Enrollment for 2018 benefits. She was immediately engaged in learning about our benefit offering, arranging travel to other locations, participating in OE presentations, providing assistance to employees, etc... Because of the many challenges that Equian has experienced in recent years with vendor issues, and internal administrative errors, there has been much for Lisa to investigate and to correct. Lisa is also coaching her team members to understand the difference between answering a question and truly serving Equian's employees.

**Leadership Innovation**
Fosters environment where innovative ideas are encouraged, tested, recognized and rewarded. Acts as an agent for change, promoting and leading change across organizational boundaries. Acts as role model for inventiveness and creativity, responsive decision maker when faced with ambiguity.

Comments from Employee
2 - Approaching Expectations
I am trying to make sure my team is working smarter and encouraging them to take on more. I am not where I need to be and hoping the review process will allow me to set expectations. It appears I am doing more of the hands on then they are. They are not elevating to the level I expect. I need to be more clear with them on what I expect. I also need to understand better what Liz and Greg do. I may be failing them by having certain expectations and not knowing what obstacles they have. As for Michele, Nancy and Tia, I think we have been moving along very well in those areas. My entire team needs to brush up on computers skills.

Comments from Reviewer
3 - Solid Performer
Lisa has shown a strong orientation to improve process, streamline procedures, and to address root causes. Lisa has not yet had sufficient time to truly innovate however, 2018 will provide many opportunities, beginning with the Socrates project.

**Leadership People Focus**
Provides constructive, timely coaching and feedback, consistently develops opportunities for team members to stretch and develop. Actively listens to others, ensures clear understanding. Fosters positive morale and engagement through leading by example, team recognition and reward, and communicates in concise, compelling and collaborative manner.

Comments from Employee
3 - Solid Performer

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

Package:000025 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000025 of 000082

**EXHIBIT A**

I am trying very hard to make sure my team understands that I would never ask them to do something I would not do. This goes back to me doing a lot of the hands on that they should also be helping with. I do think in the area of fitness I have team members engaged. On the benefits side with Greg and Liz I feel I am struggling a bit on getting them to engage. I am trying very hard to ensure I recognize them by saying thank you and good job. I am sure I could do better in this area. As for the company associates, I feel that HR is moving forward and providing outstanding service. I have heard a lot of compliments about our department. I have tried to stress with my group the importance of the internal client and that we are managing a business within a business.

Comments from Reviewer
3 - Solid Performer
Lisa is addressing performance and knowledge issues in her team. Most importantly, Lisa is holding her team accountable to provide excellent service to Equian employees. Lisa's team members have experienced multiple changes in supervisors during the past year. Now that they have an opportunity to stabilize under the same leader and to develop a team identity their performance and collaboration should improve.

**Leadership Results Focus**
Demonstrates persistence and discipline even in the face of obstacles. Empowers others to achieve success. Ensures team members have the resources needed to achieve objectives. Engages team members in setting strategy/goals. Demonstrates accountability for personal and team commitments, including errors and misses.

Comments from Employee
2 - Approaching Expectations
There have been a number of obstacles this year with open enrollment, payroll and benefits. I do feel I have been down in the weeds a bit too much and I do not have a solid strategy put together. I am behind on payfactors and I need to get the job description and pay grades started.

Comments from Reviewer
4 - Excellent Performer
Lisa has been "in the weeds" but only out of necessity. She continues to dig into process and data issues and identify root causes. I fully expect that we have put the last of our problematic benefit enrollment issues behind us and can look forward to smoother sailing in the future. Lisa will have several big initiatives to deliver this year, including Socrates, so it will be a great opportunity for her to demonstrate her results focus.

**Leadership Functional Excellence**
Considered an expert in their field and sought out for expertise. Defines and drives strategic objectives for their area(s) of responsibility. Participates in the accomplishment of work as needed to achieve goals and inspire team commitment. Demonstrates a strong focus on self improvement through feedback and continuous learning. Stays abreast of industry developments, company business operations, and market changes.

Comments from Employee
2 - Approaching Expectations
This is difficult. While I understand industry developments/changes it is difficult because I am still learning the "Equian Way". I do feel I am a change agent for the company and there is nothing we can't do. I am not sure sometimes what exactly I am supposed to be doing. I have been focused on benefits and payroll so much that I feel other duties are being put aside.

Comments from Reviewer
3 - Solid Performer
Lisa has a very solid base of knowledge in human resources, benefit administration, payroll, etc... Through Lisa's involvement, we've seen an immediate improvement in the precision of administrative oversight over these functions. I am confident that because of Lisa, I will be able to devote substantially less time to benefits oversight during 2018 which is of tremendous importance.

## Appraisal

**Overall Score**
3.40 / 4.00

Page 2 of 3

EXHIBIT A

Package:000026 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000026 of 000082

## Review Items

| Name | Employee Rating | Reviewer Rating | Section Weight | Employee Weight Score | Reviewer Weight Score |
|------|-----------------|-----------------|----------------|-----------------------|-----------------------|
| Leadership Customer Focus | 3 - Solid Performer | 4 - Excellent Performer | | | |
| Leadership Innovation | 2 - Approaching Expectations | 3 - Solid Performer | | | |
| Leadership People Focus | 3 - Solid Performer | 3 - Solid Performer | | | |
| Leadership Results Focus | 2 - Approaching Expectations | 4 - Excellent Performer | | | |
| Leadership Functional Excellence | 2 - Approaching Expectations | 3 - Solid Performer | | | |
| Total: | 2.40 / 4.00 | 3.40 / 4.00 | 100.00% | 2.40 | 3.40 |

## Goal

| Name | Goal Weight | Employee Rating | Reviewer Rating | Section Weight | Employee Weight Score | Reviewer Weight Score |
|------|-------------|-----------------|-----------------|----------------|-----------------------|-----------------------|
| Total: | | 0.00 / 4.00 | 0.00 / 4.00 | 0.00% | 0.00 | 0.00 |

## Review Status

**Employee Review Status**                    Comments
Complete - 02/02/2018
Electronic Signature - Incomplete

X _____
                        Lisa Coffey


**Reviewer Review Status**                    Comments
Pending - 12/18/2017
Electronic Signature - Incomplete

X _____
                        Thomas Fjelseth


**Final Reviewer Review Status**              Comments
Incomplete

EXHIBIT A

Filed                    18-CI-007353    12/19/2018         David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT "2"

Package:000028 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000028 of 000082

EXHIBIT A

**Mid-Term Performance Feedback Summary for Lisa Coffey**

**June 11, 2018**

Date of hire = October 23, 2017
Position = Director of Benefits, Compensation, and HR Shared Services
Time in position = Seven months
Overall performance = Below expectations

**Initial observations:**
Lisa Coffey joined the company during an especially busy period for Equian. Final preparations for open enrollment were underway with a new benefit enrollment system administrator (in place for six months). In addition to learning her new role, getting acquainted with a new team of direct reports, and getting familiar with a new organization, it was important for Lisa to devote a great deal of time to issue resolution, enrollment reconciliations, etc... These issues were due to previous, ongoing issues with benefit enrollment administration. With Lisa's involvement, many chronic issues were successfully resolved and initial impressions for her future success were positive.

**Recent and ongoing observations:**
After completing Open Enrollment and by the end of the first quarter of 2018, Lisa needed to be familiar with her team and the Equian organization. Lisa also needed to be fully acclimated to HR's systems. At that time, Lisa's focus needed to elevate so she could create a longer-term view of Equian's benefit and wellness strategy, optimal use of HR systems, and preparations toward compensation programs. Areas of improvement needed include:

**Benefit strategy and communication:** Lisa must develop a comprehensive and holistic document that describes the Equian employee benefits that will be offered in 2019 and 2020, and how employee wellness will evolve. Along with that information Equian cost trending, and employee cost sharing changes must be described. Lisa's tendency has been to isolate her attention to specific issues, such as the wellness administration vendor, rather than maintaining a broader focus on more important matters like how the various benefit programs fit together to form a comprehensive and competitive offering for employees. E-mails to Equian employees have often been too repetitive, too frequent, and less than polished/professional. New employee benefits orientation is also in need of significant improvement in quality of content and method of presentation.

**Action needed:** Develop a discussion document that details a two-year strategy and execution plan for Equian employee benefits and wellness. Review the draft with the other HR Directors for feedback, and then present the final document to the Equian Executive Leadership Team no later than August 1, 2018 with assistance from new EVP of Human Resources. Develop and implement an improved approach for new-employee benefit orientation and enrollment by the end of September, 2018. Finally, Lisa must demonstrate a proactive approach and project management for the integration of benefits for the Woburn staff.

**401(k) administration:** As the Director of Benefits, Lisa must demonstrate stronger expertise in 401(k) regulatory requirements, audit procedures, reconciliation methods, reporting, and employee communications. Each of these areas is lacking and need improvement. With the migration of Equian's 401(k) plan from Standard to One America, Lisa will need to inform the 401(k) Steering Committee of progress and must not make decisions of significance without the committee's input.

Package:000029 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000029 of 000082

Filed          18-CI-007353   12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

**Action needed:** Complete the 2017 audit and compliance testing of the Equian 401(k) plan, any required adjustments/reconciliations, and communication to affected employees, and finally provide a report to the 401(k) Steering Committee.  Provide ongoing updates to the Steering Committee regarding migration to One America.

**Collaboration:** As an HR Director, Lisa needs to demonstrate proactive communication with her peers, particularly the HR Business Partners and the Corporate Controller.  Lisa's tendency is to work independently of her peers and to disregard their input.  One example is in the Job Description project where Lisa disregarded peer input regarding how the information would be gathered, organized, and managed electronically.

**Action needed:** Demonstrate proactive communication/collaboration with HR Directors and demonstrate cooperation in the use of their input/recommendations.

**HR systems:** Lisa's role is intended to provide leadership of the HR technology strategy.  In this capacity, Lisa must demonstrate expertise with HR's systems, particularly the Paylocity system.  Lisa must partner with Finance to lead the discussion about how to optimize the configuration of Paylocity for data collection, reporting, and analytics.  Although Paylocity has offered to bring an expert resource on site to assist the Equian team members in a review of system configuration, Lisa has not followed through on scheduling, planning, or communication of that event.

**Action needed:** Lisa must demonstrate a solid knowledge of Paylocity's capabilities, and configuration requirements.  She must engage the Paylocity team with Equian HR and Payroll for an on-site review and system adjustments toward optimized use of the system, and improved reporting/analytics capabilities.

**Staff development:** Lisa has four direct reports, including one team member who is new to Equian.  It is not apparent that her newest team member has a development plan or is receiving frequent, helpful coaching.  One of Equian's leader competencies – People, requires the following behaviors:
- Provides constructive, timely coaching and feedback to others
- Consistently creates opportunities for team members to stretch and develop themselves
- Actively listens to what others are saying, probes for information to ensure clarity and understanding
- Fosters positive morale and engagement by recognizing and rewarding team efforts and results
- Communicates in a concise, compelling, and collaborative manner

**Action needed:** First and foremost, Lisa must demonstrate that each team member, particularly her newest associate, has an individual development plan and receives frequent coaching, recognition, and encouragement.

Package :000030 of 000082

Presiding Judge: HON. BRIAN EDWARDS (633312)

Package : 000030 of 000082

Filed          18-CI-007353    12/19/2018        David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT "3"

Package:000031 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000031 of 000082

Filed          18-CI-007353   12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

> Lisa
>
> Sent from my iPhone
>
>> On Jun 16, 2018, at 7:14 AM, Shankar Narayanan <snarayanan@equian.com> wrote:
>>
>> Lisa
>> Thanks for your note
>> This coming week I am traveling to Dublin Ireland for client meetings
>> and have a packed week In the interim state Jeff is helping provide
>> executive support to the Benefits area Jeff may possibly be in
>> Louisville this coming week and I would encourage you to catch up
>> with him Thanks Shankar
>>
>>
>> Sent from my iPhone
>>
>>> On Jun 15, 2018, at 7:49 PM, Lisa Coffey <LCoffey@equian.com> wrote:
>>>
>>> Shankar
>>>
>>> I Hope this note finds you are doing well.  I wanted to see if we could meet next week.  This is in regards to the meeting I had yesterday with TJ.  I am not sure if he discussed with you my current performance or what he is saying my poor performance. I am very upset and disappointed with the conversation we had and feel I need to speak to you. If possible, I would like to meet face to face. I know you are extremely busy and I would not ask if I did not feel it was important.  I have not gone to Connie and I will not go to Connie.
>>>
>>> Thank you,
>>>
>>> Lisa Coffey
>>>
>>>
>>>
>>>
>>>
>>> Sent from my iPhone
>
>

EXHIBIT A

Filed        18-CI-007353    12/19/2018        David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT "4"

Package:000033 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000033 of 000082

EXHIBIT A

Filed          18-CI-007353     12/19/2018            David L. Nicholson, Jefferson Circuit Clerk

## Lisa Coffey

| | |
|---|---|
| **From:** | Lisa Coffey |
| **Sent:** | Monday, June 18, 2018 5:43 PM |
| **To:** | Jeff Martin |
| **Subject:** | Fwd: Document for today's discussion |
| **Attachments:** | image001.jpg; ATT00001.htm; image002.png; ATT00002.htm; Performance Feedback Summary for Lisa Coffey June2018.pdf; ATT00003.htm |

Jeff

This is what I received Thursday from TJ.

Lisa

Sent from my iPhone

Begin forwarded message:

> **From:** TJ Fjelseth <TFjelseth@equian.com>
> **Date:** June 14, 2018 at 9:37:05 AM EDT
> **To:** Lisa Coffey <LCoffey@equian.com>
> **Cc:** TJ Fjelseth <TFjelseth@equian.com>
> **Subject: Document for today's discussion**
>
> Good morning, Lisa. I've attached a document that we will discuss later today during our one-to-one. I want you to have some time to review and digest the information before our conversation. I would normally have this type of discussion with you in person but I am just not able to be in Louisville before I leave Equian.
>
> A few things for you to keep in mind while you review this document:
>
> 1. The purpose of this document and our discussion is for you to have the opportunity to adjust your priorities and efforts now, rather than waiting until the end of the year only to be surprised at performance appraisal time.
> 2. My observations and this feedback have come together since early this year – this is not about recent developments, and it is not limited to my own observations.
> 3. This feedback is not about a lack of effort on your part – I believe that you invest a lot of energy and good intentions in your work. That said, you are not performing in a successful manner in several important aspects of your position. This feedback is about how you apply judgment to make decisions, about how you set your priorities, and an overall lack of a strategic approach.
> 4. My hope is that you will be able to use this feedback and the recommended actions to create a path for your own success.

Package:000034 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000034 of 000082

## Lisa Coffey

| | |
|---|---|
| **From:** | Lisa Coffey |
| **Sent:** | Monday, June 18, 2018 5:29 PM |
| **To:** | Jeff Martin |
| **Subject:** | Re: Meeting |

Perfect.  Thank you.

Sent from my iPhone

> On Jun 18, 2018, at 5:15 PM, Jeff Martin <jmartin@equian.com> wrote:
>
> Yes, I will be down there tomorrow.  Lets plan around 10:00.  I have an office in the Accounting area, so you can stop down around then.
>
> -----Original Message-----
> From: Lisa Coffey [mailto:LCoffey@equian.com]
> Sent: Monday, June 18, 2018 5:12 PM
> To: Jeff Martin <jmartin@equian.com>
> Subject: RE: Meeting
>
> Jeff
>
> I wanted to touch base with you in regards to tomorrow.  Please let me know what works.
>
> Thank you,
>
> Lisa Coffey
>
> -----Original Message-----
> From: Jeff Martin [mailto:jmartin@equian.com]
> Sent: Saturday, June 16, 2018 8:50 AM
> To: Lisa Coffey; Shankar Narayanan
> Subject: RE: Meeting
>
> Lisa, I'll reach out to you on Monday to set a time once I know my schedule.  It will likely be Tuesday morning sometime, but I'll let you know.
>
> Jeff
>
> -----Original Message-----
> From: Lisa Coffey [mailto:LCoffey@equian.com]
> Sent: Saturday, June 16, 2018 7:26 AM
> To: Shankar Narayanan <snarayanan@equian.com>
> Cc: Jeff Martin <jmartin@equian.com>
> Subject: Re: Meeting
>
> I will do that.  Safe travels!
>

Package:000035 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000035 of 000082

EXHIBIT A

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT "5"

Package:000036 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000036 of 000082

EXHIBIT A

*[handwritten note]* Expense Report – day prior to RIF –

October 23rd, start with Equian.

February 9th, performance review above average 3.4. *Attached*

June 14th, I received an email from Tj Fjelseth, EVP/CHRO, labeled performance feedback summary. TJ and I were scheduled for a one on one later in the day and he attached a two-page document stating my overall performance was unacceptable. *Attached*

June 15th, TJ and I have a conversation about my performance. TJ will not review the information line by line and he states the following:

- TJ stated he was leaving the company the next day and wasn't going to go through the memo. There was no reason to.
- TJ stated it didn't matter how much I "touched" (meaning helped) employees it was what I brought up to the executive table in August. This was the first time I was informed I needed to present a benefits presentation in August.
- We discussed Prevention Cloud and I told him how much time was spent fixing the department. He said I needed to have a wellness program to present to leadership team in August and I needed to be ready. I told him Celeste and I were demoing them because the broker never set anything up. (Prevention Cloud is a product of Crystal & Company our broker). **Witnesses are Celeste Doll, Michele Brumleve and Nancy Moody can support this comment.**
- I also was moving a 90M 401k from one vendor to another.
- I was going through the audit for the 401k.
- Paylocity training was schedule for August.
- We discussed Celeste being new and he said I could have hired a temporary and I failed to use my resources. I told him my focus was to hire someone and not hire, train, hire and retrain.
- We discuss "Q" the artificial intelligence project I spearheaded and successfully implemented. I said "you didn't even say thank you to me" and you rewarded everyone but me with time off with pay. He said it was because I didn't utilize the team and I did the work. I did the work because the others did not follow up. **Witness Rebecca Orman**
- TJ said to talk to my peers. I spoke to Arlene about the job description project and she said he never asked her for her input. Marietta said she never spoke to TJ.
- The conversation was basically going in circles. I told him I felt Connie had something to do with this write up and I could not report to her with this document. I felt she is the one who crafted it.

June 15th, I speak to Danny Gibson, CCO, and I explain the discussion I had with TJ and he advises me to go to Connie. I tell him she is the problem and he advices going to Shankar. I had confided in the past to Danny about how many issues there were that we were fixing.

June 15th, I email Shankar Narayanan, COO, and asked if I could meet with him. He forwarded my email to Jeff Martin, CFO, and said Jeff would be managing HR. I sent Jeff the disciplinary letter so he would know what I wanted to talk about. *Attached*

June 15th Connie sends out an email about team building and a two-day retreat. We need to purchase a book, read it and complete a personality assessment. All managers and directors will be present

Jeff and I met on June 19th, we discussed the situation. I informed him what I have done for the company and the disaster I inherited. Celeste was there almost 60 days and Liz was taking on additional responsibilities. Here were some of the items:

- Anthem was not reconciled for over a year and there was roughly $100,000 in overpayments made to Anthem. Trover associates were still under Trover and they were on Equian. COBRA recipients who were not paying were still covered and should not have been. I worked with Anthem to have accounts fixed and refunded. *Connie was responsible for Anthem.*
- Prevention Cloud was an issue and I was doing my best with the program. I moved the tobacco affidavit to Business Solver so I would not need Prevention Cloud. Our deadline to complete wellness was June 30th. I gave Prevention cloud 60 days-notice and termed them July 31st. Cost savings $38,000 for 2018. Jeff stated "we probably pissed off more people than we did good" and I concurred.
- Told Jeff I moved the tobacco affidavit to Business Solver so I would not need Prevention Cloud for this function.
- Told Jeff I completed a hold harmless agreement and moved the Health Spending agreements to Business Solver so we would not continue having issues with accounts being closed and money kicked back. Roughly 100 employees ongoing not accepting the terms and agreements and accounts being closed. Employees lose the money.
- I told Jeff about the 401k testing issues and I was going through the audit.
- I was moving the 401k to One America and handling all the paperwork, building the website and working on ensuring the data from the Standard was going to come over clean. There was no feed and we were doing thing manually. I do not think Jeff knew we were moving vendors.
- Also, pulling our newest company Omni Claim on benefits and conducting open enrollment with the, bringing them on 401k and payroll September 1st.
- Fitness on the floor – Louisville and Southfield
- I stated I fully implemented "Q" artificial intelligence and had to continue to maintain it. I did not think we should have purchased it. Our company was too small. I told him about the comment that TJ made about not even thanking me. TJ did a testimonial for Socrates before we even implemented or launched it.
- Discussed me having a two-year wellness program presentation and he said not to worry about a 2 year presentation and to focus on 2019.
- Discussed whether I work well with others and we discussed that Carrie and I had some past issues but I thought we were working them out. Things were getting better with me having Celeste on board.
- On Friday, June 15th Connie sale for an onboarding plans for all new hires hired May or later they were due June 22nd. I told him she will come back and ask me for Celeste's onboarding plan and Celeste was hired in April. I was just using this example as proof that she would come back for a planner. We both agreed it was a waste of time as Celeste had almost was there for almost two months and was doing a great job.

Package:000038 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000038 of 000082

EXHIBIT A

- Jeff asked me if I wanted to be at Equian and I told him I loved the company and I could see the positive changes we were making but I couldn't work for her. I asked if I could report to him and he said he couldn't do that.
- Jeff said as far as he is concerned the write up meant nothing and it did not exist. The document was never signed by me and/or placed in my file.

Connie

June 8th, Connie sends an email to several of us and discusses onboarding plans. Connie is not our manager – the assumption is Connie will be the interim manager.

Several HR Directors are upset by this and we do not want to report to her. Connie has her favorites. Several Directors feel we should send a singed letter to Scott Mingee, CEO, and tell him this or drive up there.

On June 1st, Connie sent me an email about getting a birthday card for Nancy Moody, part time fitness trainer. I was in NY. I had reached out to Liz and Liz had a card. When I returned to Louisville, I had I had muffins/fruit and gave Nancy a card with a $25 gift card. I sent an email to Louisville saying come by for a belated birthday *email attached

June 25th – Connie emails me asking where the onboarding plan is for Celeste. I tell her she said anyone in May and she replied she wants one anyway. This is exactly what I told Jeff Martin what would happen. I go ahead and do it. *Email attached & onboarding.

On June 28th, I sent an email stating I would be working from home. At the beginning of the week there was an F1 tornado that hit and took down a tree I needed to have removed and my hvac unit was out. Connie replied within 3 minutes asking who was going to handle my walk in traffic since my 2 employees were out. This comment makes no sense since I have 17 locations cross the US plus remote employees. I replied Travis White, Ashley and Marietta were aware. Connie emailed Marietta Thompson, HR Director, on the side Marietta and asked if it was ok. This is completely inappropriate and unprofessional for her to email a peer. No one else is expected to have a back up and I had access to email and phone.    *Both emails attached

On June 29th, I return to work and we are slammed with emails about Prevention Cloud. Employees are very upset. Celeste is out of town and I have to do payroll. Michael an employee comes in and talks about his medical bills. This is about the 4th or 5th time he has come to the office. Then, I called Jen Mattingly and we talked for a while prevention cloud and waiving the coaching calls. I received an email from Connie at 953 am saying I was rude and short with associates. I emailed Connie back and asked how I was rude and she never replied. She would not tell me how or who I was rude to. She did not rply I sent the email to Jeff Martin because I just couldn't take it anymore. I am completely exhausted at this point. He tells me to work it out with her. *email attached

On July 2nd I requested PTO. Connie replied "I want to ensure you have a fully prepared back up this time please. Who else is out those dates? Are we doing anything for Woburn on those dates? This to me means that I didn't prove proper coverage last time. I was getting pretty frustrated and again I felt picked. I didn't go as I was afraid I would get terminated. She said it is probably best I didn't go. *Emails attached

EXHIBIT A

Package:000040 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000040 of 000082

There are numerous emails going back and forth on wellness programs. Meeting in May we informed Crystal what we needed and they did not bring any companies to the table. Celeste and I start doing our own RFP. In June, Connie tells me to come up with a list of what I need. I know what I need but I want to see demonstrations in case there are newer program. Connie forwards me and email with a white paper and tells me to read it. I continue to work with Celeste and tell Crystal what I need. Connie sends an email out with our vendor stating to give them a must have list and the article she sent me should be suffice to create a list. This is embarrassing as she is belittling me to our broker. This is the same as how she emailed all my peers about the day I worked from home. *emails attached

Connie asks my opinion about a tuition reimbursement policy. I answer and she goes back and forth and ask me if I read the policy. She treats me like I am stupid. *email attached.

Around July 2nd Connie sends an email to everyone saying she is going to decorate Travis' office to surprise him. She comes to work on the 4th of July holiday and decorates Travis' office to an extreme. Connie comes to work on the 5th and hides in his office to video him. Everyone is talking about how crazy this is and he doesn't directly report to him. She emails everyone that she made homemade cupcakes. She apparently videos it but doesn't distribute the video. She didn't do anything like this for Nancy – this is clear favoritism. They are friends outside of work.

Connie has an offsite meeting, with all managers and directors on July 17th, 18th, 19th. At the meeting, Connie brings up working from home and says we as a company should be more flexible. I am completely taken back because of how she treated me with the tornado. I assume she is talking about another department but not Human Resources. During the meeting, Travis White and Daniel Smith share how they sent them birthday presents and how they have never worked for such a great boss. They are clearly friends and she is treating them different than the rest of the team. They both get descriptive on the presents she has purchased. She shipped Daniel a present to his home.

The rest of the HR team can't understand why we are doing this exercise when she is an interm boss, we are all busy and we know about the cost reductions.

July 20th, the day after the retreat Travis tells me how he will be working from home on FridaysHe said that Daniel was cool with it and they agreed he could do it. I said it must be nice because you see when I work from home how I am treated. The email she sent about the "walk-ins". Travis works from home.

July 20th, I asked Carrie for her advice on how to handle the compliance testing refunds. Carrie replies there is no need for us to discuss and provides step by step email advice on how to handle. Connie sends an inappropriate note about how to do this and do it correctly. Completely uncalled for especially with a peer. *email attached.

July 20th is Liz's birthday and I get an email at 630 am from Connie if I did anything for Liz's birthday. I respond yes, I did purchase a card, muffins and fruit. Connie comes to our 10 am meeting late. I am on the phone with One America. Connie storms off and says she is busy. I email her and state I have a card for Liz's birthday, can she sign it and I will walk over to her building. She replies it would have been nice had I had it at the meetings that week. She never signs the card so I give it to Liz at the end of the day. She did not purchase any gift for Liz, decorate or make cupcakes. *email attached

Package:000041 of 000082
Presiding Judge: HON. BRIAN EDWARDS (630312)
Package : 000041 of 000082

EXHIBIT A

I asked Daniel to obtain information from past insurance brokers. This was the same as how I handled with Julia. Connie continued to tell me to obtain the information myself because Daniel had no idea what I was talking about. I spoke to the broker and he went on to tell me how Daniel was the most incompetent HR Manager he ever worked with. The broker went ahead and gave me the information. Connie was mad that I wouldn't do the work for him *Email attached

Working on 401k conversion and find out Scott Mingee does not even know we are moving the 401k.

Travis White informs associates that I am going be RIF'ed due to my poor performance. This was the week before I am let go. Holly, Fawn and Joanna can confirm this.

Travis and Connie are friends outside of work – Facebook supports this.

Travis is the only HR Manager and Julia and Jeanneta are generalist. Travis makes $11k more.

I was a Director prior to Joanne Bean being hired and Daniel Smith being promoted. Travis White have less experience than me.

Mariette Thompson, black female, was the most senior director and was let go. Connie discriminated against both of us.

Attorney sent a letter trying to negotiate. Danny Gibson replies that I was terminated for performance. In my termination, she said it was not performance and/or seniority it was the position being eliminated. I asked why someone with less experience?

**Connie and Investigation with Daniel Smith**

July 9th Liz Fulton receives a complaint from Brianne Clark, black female, from Southfield. The complaint was about a write-up she signed and felt she shouldn't' have. She was complaining about her Supervisor (Maria Cooke) and her HR Manager (Daniel Smith). Liz came to me and asked what to do. I told her that she should take this to Connie as Daniel reports to her and she should investigate.

July 13th, I received a call from Brianne and she said no one had contacted her. I apologized and told her Connie was in meetings all week but Liz brought the concern to her. I assured her Connie would follow up. I email Connie on July 15th and told her Brianne called. *email attached

Later during the week, I saw Connie outside and asked if she followed up with her. Connie said she took care of it, she went on to say how employees say things about HR, etc. I said I understood.

July 26th, I received a call from Brianne. I called her back at 612 pm and we spoke for 21 minutes. Brianne went on to tell me that no one had contacted her and Dan was trying to talk to her about it. She said she told him I am not talking to you about this as she has a concern with him. He said to come to her office and he wanted to talk to her about something else. She went to the office and he brought up the situation and she walked out. She said Connie has never contacted her and Dan was following up on her complaint about him.

She went into further details about Maria Cooke stating the employees had ghettoness. I was completely shocked. I told her she could call Jeff Martin (Connie's boss), Tony Kern (local vp) or she

EXHIBIT A

should call the Ethics Hotline. The next day I went to work and spoke to Marietta Thompson, HR Director, and I explained the situation. She said she should go to the hotline so they could do a proper investigation. I reached out back to Brianne and told her to go to contact the hotline. Brianne had sent Liz an email on July 29th about our conversation.

I spoke to Brianne on August 15th and she said no one has contacted her. She said Maria Cooke was contacted because she heard Maria talking to someone and she could figure out what they were talking about and it was the situation.  My understanding is the ethics hotline gave Connie the investigation. Connie basically failed to investigate, allowed her employee to investigate himself and then when the concern went to the hotline she investigated it herself.  The hotline didn't realize the complaint now included Connie.

August 7th, Connie tells team via conference call about the budget and reductions in force. She says she will meet with each department heads week but she doesn't.  I start to figure out that it is me. Also, department leaders are following up on items like crazy to see where I am at with items – 401k, audit, etc.

August 13th, I have 401k auditors there for the week and Paylocity training in Louisville for two days.

August 15th, I submit an expense report and she denies it. She says I didn't get preapproval.  I reply ok who do I send it to.  She replies that she is disappointed in me.  She is still harassing me the night before she knows she is going to RIF me. *Email attached

Witnesses: Joanna Ernst, Liz Fulton, Celeste Doll, Travis White, Rhonda Orman, Kathleen Smith (standard), Jeff Martin, Danny Gibson,

EXHIBIT A

Filed                18-CI-007353    12/19/2018           David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT "6"

Package:000044 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000044 of 000082

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

## Lisa Coffey

**From:**          Lisa Coffey
**Sent:**          Tuesday, June 05, 2018 11:13 PM
**To:**          Connie Janowski
**Subject:**          RE: Reminder

Connie

Thank you – Liz took care of this – I dropped the ball – my morning was all changed around Friday and I left early to head to NY.

Lisa

---

**From:** Connie Janowski
**Sent:** Friday, June 01, 2018 2:47 PM
**To:** Lisa Coffey
**Subject:** Reminder

Nancy's birthday is next week while you are out, so you may want to start a card around

## Connie Janowski, SPHR-SHRP-SCP/ HR Director, Corporate Services

9400 Bunsen Parkway / Louisville KY 40220
P. 502.214.5151
F. 800.424.6492
**equian.com**



**Access Q, your Equian Digital Personal Assistant**

Follow us on Glassdoor

equian.com
EquianSecure



Filed          18-CI-007353    12/19/2018       1   David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package:000045 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000045 of 000082

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

## Lisa Coffey

| | |
|---|---|
| **From:** | Lisa Coffey |
| **Sent:** | Thursday, June 07, 2018 9:37 AM |
| **To:** | Celeste Doll; Ashley Geary; Liz Fulton; Nancy Moody; Connie Janowski; Marietta W. Thompson; Joanna Ernst; Greg Tripure; Travis White |
| **Subject:** | Treats |

Happy Birthday Nancy!  We have some coffee cake and fruit (of course) in the HR office to celebrate!

Sorry I missed your big day!



**Q is here! Access your Digital Personal Assistant 24/7/365 for HR, Benefits and Payroll questions.**
Lisa M. Coffey, Director, Benefits, Compensation & HR Shared Solutions
9390 Bunsen Parkway, Louisville, KY 40220
Work: 502.214.1533 / Fax: 800.424.6492
equian.com
EquianSecure

Package:000046 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000046 of 000082

# EXHIBIT "7"

Package:000047 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000047 of 000082

EXHIBIT A

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

## Lisa Coffey

| | |
|---|---|
| **From:** | Connie Janowski |
| **Sent:** | Tuesday, June 26, 2018 10:10 AM |
| **To:** | Lisa Coffey |
| **Cc:** | Connie Janowski |
| **Subject:** | Reply ASAP |

Please respond to her before noon and copy me

Connie Janowski, SPHR
HR Director, Corporate Services
(502) 819-1755 cell
(502) 214-5151 office

Sent from my iPhone

Begin forwarded message:

> **From:** Jennifer Mattingly <jmattingly@equian.com>
> **Date:** June 26, 2018 at 10:02:40 AM EDT
> **To:** Connie Janowski <CJanowski@equian.com>
> **Subject: FW: physician physical forms for insurance**
>
> Hi Connie,
>
> I have not heard back from Lisa and I need to get a response back as soon as possible.
>
> Thank you so so much!
>
> Also, please let me know when you have a minute to chat. I have an HR question for you.
>
> Thanks!



**Jennifer Mattingly / C-Suite Executive Assistant**
5975 Castle Creek Parkway, Suite 100, Indianapolis, IN  46250
P. 317.806.2002 / Mobile 317.439.8163
F. 317.806.2103
equian.com



Filed          18-CI-007353    12/19/2018      1    David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package:000048 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000048 of 000082

**From:** Jennifer Mattingly
**Sent:** Monday, June 25, 2018 3:00 PM
**To:** Connie Janowski <CJanowski@equian.com>
**Subject:** RE: physician physical forms for insurance

Thank you....much appreciated.



**Jennifer Mattingly / C-Suite Executive Assistant**
5975 Castle Creek Parkway, Suite 100, Indianapolis, IN  46250
P. 317.806.2002 / Mobile 317.439.8163
F. 317.806.2103
equian.com



**From:** Connie Janowski [mailto:CJanowski@equian.com]
**Sent:** Monday, June 25, 2018 2:54 PM
**To:** Jennifer Mattingly <jmattingly@equian.com>
**Subject:** RE: physician physical forms for insurance

I have forwarded this to Lisa who handles all of the Wellness issues, and the rate increases.

**From:** Jennifer Mattingly [mailto:jmattingly@equian.com]
**Sent:** Monday, June 25, 2018 11:36 AM
**To:** Connie Janowski
**Cc:** Scott Mingee; Shankar Narayanan
**Subject:** physician physical forms for insurance
**Importance:** High

Hi Connie,

I need to get an extension for Scott and Shankar on their physical forms that are supposed to be finalized by the end of the month.  They have both been traveling constantly and it's not possible to get these completed by then.

Please let me know.

Thank you,
Jen

EXHIBIT A

Filed                18-CI-007353      12/19/2018        David L. Nicholson, Jefferson Circuit Clerk



**Jennifer Mattingly / C-Suite Executive Assistant**
5975 Castle Creek Parkway, Suite 100, Indianapolis, IN  46250
P. 317.806.2002 / Mobile 317.439.8163
F. 317.806.2103
equian.com



Package:000050 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000050 of 000082

Filed                18-CI-007353      12/19/2018      3     David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

## Lisa Coffey

| | |
|---|---|
| **From:** | Lisa Coffey |
| **Sent:** | Monday, June 25, 2018 5:26 PM |
| **To:** | Lisa coffey (lcoffeyjames@att.net) |
| **Subject:** | FW: On boarding plans |

Package:000051 of 000082

**From:** Connie Janowski
**Sent:** Monday, June 25, 2018 11:56 AM
**To:** Lisa Coffey
**Subject:** RE: On boarding plans

I'd really like Ashley to have one because we will be relying on her so heavily and she has a lot to learn. I'd like to make sure she has a comprehensive plan. I thought she was hired in May, but should have checked, sorry.

**From:** Lisa Coffey
**Sent:** Monday, June 25, 2018 11:50 AM
**To:** Connie Janowski
**Subject:** RE: On boarding plans

Connie

Your email said anyone hired in May. I did not prepare one because you said May.

Lisa

Presiding Judge: HON. BRIAN EDWARDS (630312)

**From:** Connie Janowski
**Sent:** Monday, June 25, 2018 11:49 AM
**To:** Kristin Paine; Lisa Coffey; Marietta W. Thompson; Myrna Delgado
**Cc:** Daniel Smith; Travis White; Arlene Satterwhite; Joanne Bean; Heather D. Martin
**Subject:** RE: On boarding plans

Just a reminder that I'm waiting on these for any new hires or people new to roles.
If you are in the CC line, you are done, thanks! Please reach out to Dan or Arlene if you'd like to pick their brains about what worked for their plans.
Joanne, I am working on yours. Here are the new hires that need plans:

| Celeste | Doll | 04/30/2018 |
| Joanne | Bean | 05/14/2018 |
| Ashley | Geary | 05/29/2018 |
| Holly | Bartlett-Connor | 06/04/2018 |
| Fawn | Collins | 06/11/2018 |
| Jeanetta | Taylor | 06/11/2018 |
| Alyssa | Walther | 04/30/2018 |

Package : 000051 of 000082

EXHIBIT A

Filed          18-CI-007353     12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

**From:** Connie Janowski
**Sent:** Friday, June 15, 2018 9:26 AM
**To:** Arlene Satterwhite; Connie Janowski; Daniel Smith; Heather D. Martin; Joanne Bean; Kristin Paine; Lisa Coffey; Marietta W. Thompson; Myrna Delgado; Travis White
**Subject:** RE: On boarding plans

I'd like to see onboarding plans for all of the new hires/new roles in HR going back to anyone hired in May or later.   Can I please get a draft by **June 22nd**?   Attached are some samples from IT and a mock up for HR.


Thanks- Connie

**From:** Myrna Delgado
**Sent:** Friday, June 08, 2018 2:34 PM
**To:** Connie Janowski
**Subject:** RE: On boarding plans

Hi Connie,
I'd like to see some of the examples and then we can certainly share and discuss.
Thank you.
Myrna

**From:** Connie Janowski
**Sent:** Friday, June 08, 2018 9:55 AM
**To:** Myrna Delgado; Marietta W. Thompson; Lisa Coffey
**Subject:** On boarding plans

I know a while back, TJ asked for on-boarding plans for all of the new HR hires.  If you need any help with them please let me know.
Trying to get all of my leaders to do them too and some have done a nice job if you need any samples.
I'd like to see them when they are ready because I think each one will add to our learning curve in how to do them.
Thanks!

Connie Janowski, SPHR
HR Director, Corporate Services
(502) 819-1755 cell
(502) 214-5151 office

Sent from my iPhone

On Jun 8, 2018, at 10:29 AM, Myrna Delgado <MDelgado@equian.com> wrote:

> I'd like to welcome Fawn to the Talent Acquisition team.  She has a Master of Science in Human
> Resources Leadership.  Fawn brings over 12 years of experience in Human Resources.  Her HR
> experience has been primarily in the Recruiting area but has also included Generalist work.
> Her most recent position was with Charter Communications.
> She will be located in the Louisville office.
>
> Fawn will be attending orientation this coming Monday, June 11th.
>
> Welcome Fawn!

EXHIBIT A

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

<image001.jpg>

## Access Q, your Equian Digital Personal Assistant

**Myrna Delgado**
**Talent Acquisition Manager**
600 12th Street, Suite 300, Golden, CO 80401
Office -  (720)-903-7298
Cell – (720)-417-8568
**MDelgado@equian.com**

**<image002.png>**

Follow us on Glassdoor
**EquianSecure**

Package:000053 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000053 of 000082

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT "8"

Package:000054 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000054 of 000082

Filed              18-CI-007353   12/19/2018              David L. Nicholson, Jefferson Circuit Clerk

## Lisa Coffey

**From:**        Lisa Coffey
**Sent:**        Thursday, June 28, 2018 8:37 AM
**To:**          Connie Janowski
**Subject:**     RE: Today

Ashley is also aware and has my cell.

**From:** Connie Janowski
**Sent:** Thursday, June 28, 2018 8:33 AM
**To:** Lisa Coffey
**Cc:** Marietta W. Thompson; Travis White
**Subject:** Re: Today

How would you like walk in traffic handled since both of your other people are also out?

Connie Janowski, SPHR
HR Director, Corporate Services
(502) 819-1755 cell
(502) 214-5151 office

Sent from my iPhone

On Jun 28, 2018, at 8:30 AM, Lisa Coffey <LCoffey@equian.com> wrote:

> I will be working from home today waiting on the HVAC guy (been waiting a week) – the good news is
> the tree is gone and I just have a lot of debris to clean up, fence is broke but it can be fixed.  I didn't
> realize how hard the storm hit on the end of the street.  It looks like a war zone.
>
> If you need anything, please do not hesitate to  call my cell at 502-528-9206.
>
>
> <image001.png>
>
> **Q is here! Access your Digital Personal Assistant 24/7/365 for HR, Benefits and Payroll questions.**
> Lisa M. Coffey, Director, Benefits, Compensation & HR Shared Solutions
> 9390 Bunsen Parkway, Louisville, KY 40220
> Work: 502.214.1533 / Fax: 800.424.6492
> equian.com
> EquianSecure

Filed              18-CI-007353   12/19/2018        1   David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package:000055 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000055 of 000082

Follow us on Glassdoor

equian.com
EquianSecure

**From:** Lisa Coffey
**Sent:** Thursday, June 28, 2018 8:34 AM
**To:** Connie Janowski
**Cc:** Marietta W. Thompson; Travis White
**Subject:** RE: Today

I told Travis I may be out today and he can have them call my cell.   They can also email me.  If the HVAC person is here earlier than later, I would be in.  The walk in traffic I have had all week is for Prevention Cloud.

**From:** Connie Janowski
**Sent:** Thursday, June 28, 2018 8:33 AM
**To:** Lisa Coffey
**Cc:** Marietta W. Thompson; Travis White
**Subject:** Re: Today

How would you like walk in traffic handled since both of your other people are also out?

Connie Janowski, SPHR
HR Director, Corporate Services
(502) 819-1755 cell
(502) 214-5151 office

Sent from my iPhone

On Jun 28, 2018, at 8:30 AM, Lisa Coffey <LCoffey@equian.com> wrote:

> I will be working from home today waiting on the HVAC guy (been waiting a week) – the good news is the tree is gone and I just have a lot of debris to clean up, fence is broke but it can be fixed.   I didn't realize how hard the storm hit on the end of the street.  It looks like a war zone.
>
> If you need anything, please do not hesitate to  call my cell at 502-528-9206.
>
> <image001.png>
>
> **Q is here! Access your Digital Personal Assistant 24/7/365 for HR, Benefits and Payroll questions.**
> Lisa M. Coffey, Director, Benefits, Compensation & HR Shared Solutions
> 9390 Bunsen Parkway, Louisville, KY 40220
> Work: 502.214.1533 / Fax: 800.424.6492
> equian.com
> EquianSecure

Package: 000056 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000056 of 000082

EXHIBIT A

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

## Lisa Coffey

| | |
|---|---|
| **From:** | Lisa Coffey |
| **Sent:** | Friday, June 29, 2018 4:05 PM |
| **To:** | Lisa coffey (lcoffeyjames@att.net) |
| **Subject:** | FW: Associate questions |

**From:** Lisa Coffey
**Sent:** Friday, June 29, 2018 3:06 PM
**To:** Jeff Martin
**Subject:** RE: Associate questions

Jeff:

I will follow your advice and reach out to her.   I really like working here and things are finally coming together in my Department.  It hasn't been easy but I can see where we are going.  I do appreciate your confidentiality in this matter.

Thank you and have a great weekend -

Lisa

**From:** Jeff Martin [mailto:jmartin@equian.com]
**Sent:** Friday, June 29, 2018 3:00 PM
**To:** Lisa Coffey
**Subject:** RE: Associate questions

This issue will only work itself out if you and Connie can communicate with each other.  Agree that Connie's email below wasn't very constructive.  However, it is important to be able to receive constructive criticism...we all have received it before and it's important to our development.  I'd recommend going back to Connie and saying thanks for the heads up, but would like to understand more about what she heard since you're not aware of the specific instances she's referring to.

On the onboarding plans, I'd inquire as to what she's looking to accomplish with this.  She may want to make sure all new hires have a good training plan in place to get them up to speed quickly.  If Celeste is at full potential now, then may not be necessary.  Or you can provide her what is left to be done with her training.  Not sure what Connie is looking for, so I think seeking to understand is okay.

In the end, if you think Connie and you are not working well together, then you guys need to discuss.  While we can't force a friendship, we should all at least respect and support each other from a team standpoint.

I'll respect your confidence at this point and not approach Connie.  Recommend you guys have a discussion and how you're are feeling.

**From:** Lisa Coffey [mailto:LCoffey@equian.com]
**Sent:** Friday, June 29, 2018 1:42 PM
**To:** Jeff Martin <jmartin@equian.com>
**Subject:** FW: Associate questions

Filed          18-CI-007353    12/19/2018          1   David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package:000057 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000057 of 000082

Filed        18-CI-007353    12/19/2018         David L. Nicholson, Jefferson Circuit Clerk

Jeff:

I am forwarding you an email I received from Connie.  As of 9:53 am, I spoke face to face with one employee about his benefits.  And, I spoke to Jen Mattingly for a while about the coaching calls being waived.  I was not rude or short with anyone.  I have no idea what Connie is talking about.  I did reply to 111 emails from the HR Mailbox and they are mostly about Prevention Cloud.  There are a lot of emails complaining about the physical and coaching calls.  I have probably responded to another 50 from my work email.

During our meeting last week, I told you about the onboarding plans she requested to the HR Business Partners for anyone hired May to current.  I said she would ask for Celeste's even though Celeste was hired in April.  I was correct and she wants it even though Celeste has been here 60 days.  Basically, I am having to go backwards and type up what I have already trained Celeste on.  You and I both agreed it was a bit much.  There are several other items but I don't want to consume your time.

Connie  is targeting me and I am not sure why.  This treatment is really taking a lot of focus away from my job, effecting my performance and basically making me sick to my stomach.

I am seeking your advice and trying my best to get through the day.

Thank you for your time,


Lisa


---

**From:** Connie Janowski
**Sent:** Friday, June 29, 2018 9:53 AM
**To:** Lisa Coffey
**Cc:** Connie Janowski
**Subject:** Associate questions

I have received 2 reports just this morning that you have been rude and short with associates who have questions about benefits and/or Prevention Cloud.
Please make an immediate correction.

**Connie Janowski, / HR Director, Interim CHRO**
9400 Bunsen Parkway / Louisville KY 40220
P. 502.214.5151
F. 800.424.6492
**equian.com**



**Access Q, your Equian Digital Personal Assistant**

Follow us on Glassdoor

equian.com

Filed        18-CI-007353    12/19/2018       2   David L. Nicholson, Jefferson Circuit Clerk

Package:000058 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000058 of 000082

EXHIBIT A

Filed                    18-CI-007353    12/19/2018         David L. Nicholson, Jefferson Circuit Clerk

EquianSecure



Package:000059 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000059 of 000082

EXHIBIT A

# EXHIBIT "9"

Package:000060 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000060 of 000082

EXHIBIT A

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

## FedEx Office Center 1613

| | |
|---|---|
| **From:** | Lisa Coffey <LCoffey@equian.com> |
| **Sent:** | Friday, June 29, 2018 9:54 AM |
| **To:** | Lisa coffey (lcoffeyjames@att.net) |
| **Subject:** | FW: Associate questions |

**From:** Lisa Coffey
**Sent:** Friday, June 29, 2018 9:54 AM
**To:** Connie Janowski
**Subject:** RE: Associate questions

I have no idea what you are talking about. I just met with someone and spoke to Jen Mattingly.  I have been working on 401k.

**From:** Connie Janowski
**Sent:** Friday, June 29, 2018 9:53 AM
**To:** Lisa Coffey
**Cc:** Connie Janowski
**Subject:** Associate questions

I have received 2 reports just this morning that you have been rude and short with associates who have questions about benefits and/or Prevention Cloud.
Please make an immediate correction.

**Connie Janowski, / HR Director, Interim CHRO**
9400 Bunsen Parkway / Louisville KY 40220
P. 502.214.5151
F. 800.424.6492
**equian.com**



Access Q, your Equian Digital Personal Assistant

Follow us on Glassdoor

equian.com
EquianSecure



EXHIBIT A

Package:000061 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000061 of 000082

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

## Marietta W. Thompson

**From:**          -
**Sent:**          Marietta W. Thompson
**To:**            Thursday, June 28, 2018 12:53 PM
**Subject:**       Connie Janowski
                   RE: Today

Yes, I spoke with Ashley this morning about her call with Lisa.  thanks

**From:** Connie Janowski
**Sent:** Thursday, June 28, 2018 8:41 AM
**To:** Marietta W. Thompson
**Subject:** Fwd: Today

Is this ok with you?

Connie Janowski, SPHR
HR Director, Corporate Services
(502) 819-1755 cell
(502) 214-5151 office

Sent from my iPhone

Begin forwarded message:

> **From:** Lisa Coffey <LCoffey@equian.com>
> **Date:** June 28, 2018 at 8:37:12 AM EDT
> **To:** Connie Janowski <CJanowski@equian.com>
> **Subject: RE: Today**
>
> Ashley is also aware and has my cell.
>
> **From:** Connie Janowski
> **Sent:** Thursday, June 28, 2018 8:33 AM
> **To:** Lisa Coffey
> **Cc:** Marietta W. Thompson; Travis White
> **Subject:** Re: Today
>
> How would you like walk in traffic handled since both of your other people are also out?
>
> Connie Janowski, SPHR
> HR Director, Corporate Services
> (502) 819-1755 cell
> (502) 214-5151 office
>
> Sent from my iPhone
>
> On Jun 28, 2018, at 8:30 AM, Lisa Coffey <LCoffey@equian.com> wrote:
>
>> I will be working from home today waiting on the HVAC guy (been waiting a week) – the
>> good news is the tree is gone and I just have a lot of debris to clean up, fence is broke

Package:000062 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000062 of 000082

Filed          18-CI-007353    12/19/2018    ¹ David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

but it can be fixed.   I didn't realize how hard the storm hit on the end of the street.  It looks like a war zone.

If you need anything, please do not hesitate to  call my cell at 502-528-9206.

<image001.png>

**Q is here! Access your Digital Personal Assistant 24/7/365 for HR, Benefits and Payroll questions.**
Lisa M. Coffey, Director, Benefits, Compensation & HR Shared Solutions
9390 Bunsen Parkway, Louisville, KY 40220
Work: 502.214.1533 / Fax: 800.424.6492
equian.com
EquianSecure

EXHIBIT A

Filed          18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

## FedEx Office Center 1613

| | |
|---|---|
| **From:** | Lisa Coffey <LCoffey@equian.com> |
| **Sent:** | Friday, June 29, 2018 10:14 AM |
| **To:** | Lisa coffey (lcoffeyjames@att.net) |
| **Subject:** | FW: Today |

**From:** Marietta W. Thompson
**Sent:** Thursday, June 28, 2018 9:00 AM
**To:** Lisa Coffey; Travis White; Connie Janowski
**Subject:** RE: Today

Hey Lisa,

I will also check in with Ashley.  Hope everything works out..   thanks, Marietta

**From:** Lisa Coffey
**Sent:** Thursday, June 28, 2018 8:45 AM
**To:** Travis White; Connie Janowski
**Cc:** Marietta W. Thompson
**Subject:** RE: Today

I did let her know.

**From:** Travis White
**Sent:** Thursday, June 28, 2018 8:44 AM
**To:** Lisa Coffey; Connie Janowski
**Cc:** Marietta W. Thompson
**Subject:** RE: Today

I will let Ashley know as well because I have a few appointments on the calendar.

 EQUIAN

**Travis White, HR Manager**
9390 Bunsen Parkway, Louisville, KY 40220
Office: 502-214-1498
**equian.com**



**Access Q, your Equian Digital Personal Assistant**

Filed          18-CI-007353    12/19/2018      <sup>1</sup> David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package:000064 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000064 of 000082

Filed          18-CI-007353     12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT "10"

Package:000065 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000065 of 000082

EXHIBIT A

Filed        18-CI-007353    12/19/2018        David L. Nicholson, Jefferson Circuit Clerk

## FedEx Office Center 1613

| | |
|---|---|
| **From:** | Lisa Coffey <LCoffey@equian.com> |
| **Sent:** | Tuesday, July 3, 2018 2:49 PM |
| **To:** | Lisa coffey (lcoffeyjames@att.net) |
| **Subject:** | FW: PTO |

**From:** Connie Janowski
**Sent:** Tuesday, July 03, 2018 2:42 PM
**To:** Lisa Coffey
**Subject:** Re: PTO

Ok thanks for the overview.  That should be fine then.  Appreciate the update

Connie Janowski, SPHR
HR Director, Corporate Services
(502) 819-1755 cell
(502) 214-5151 office

Sent from my iPhone

On Jul 3, 2018, at 2:12 PM, Lisa Coffey <LCoffey@equian.com> wrote:

Connie:

The dates I am thinking are the 20th, 23rd and possibly the 24th  Neither Celeste, nor Liz are out of the office on any those three dates.  I am not sure what "fully prepared back up this time please" means.  If you are referring to me working from home Thursday, I had a F1 tornado take down and huge tree and my HVAC went out.  I worked the entire day and all associates were taken care of via phone or email?  When I started  at Equian, TJ said "this is how this works – you tell me what you need".  He was referring to time off or working from home.

As for Woburn, their open enrollment starts the 17th and goes to August 1st.  Joanne will be meeting with employees on the 16th and 17th and she will be conducting those on her own.

I am not positive if I am going to take PTO as the airfare will increase the longer I wait.
If you would like to speak to me about any of this, please give me a call.  Sometimes, I think emails get lost in translation and the best way is to simply have a conversation.  I know you are out of the office.  If you are on PTO, I do not want to interrupt you.

Thank you,
Lisa

**From:** Connie Janowski
**Sent:** Monday, July 02, 2018 4:20 PM
**To:** Lisa Coffey
**Subject:** Re: PTO

Filed        18-CI-007353    12/19/2018        [1] David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

I want to ensure you have a fully prepared back up this time please.   Who else is out those dates?  Are we doing anything for Woburn on those dates?

Connie Janowski, SPHR
HR Director, Corporate Services
(502) 819-1755 cell
(502) 214-5151 office

Sent from my iPhone

On Jul 2, 2018, at 3:50 PM, Lisa Coffey <LCoffey@equian.com> wrote:

> Connie
>
> I am thinking about taking time off - possible dates are 20th - 24rd.    Do you see any issues with this?  I have not booked anything and wanted to check with you first.
>
> <image001.png>
>
> **Q is here! Access your Digital Personal Assistant 24/7/365 for HR, Benefits and Payroll questions.**
> Lisa M. Coffey, Director, Benefits, Compensation & HR Shared Solutions
> 9390 Bunsen Parkway, Louisville, KY 40220
> Work: 502.214.1533 / Fax: 800.424.6492
> equian.com
> EquianSecure

**** This communication may contain privileged and/or confidential information. If you are not the intended recipient, you are hereby notified that disclosing, copying, or distributing of the contents is strictly prohibited. If you have received this message in error, please contact the sender immediately and destroy any copies of this document. ****

EXHIBIT A

Package : 000067 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000067 of 000082

# EXHIBIT "11"

Package:000069 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000069 of 000082

Filed



Package:000070 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000070 of 000082

    

8-CI-007593   12/19/2018   David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Filed   18-CI-007353   12/19/2018   David L. Nicholson, Jefferson Circuit Clerk

< **Travis N Merissa's Post**   •••

influence and inspiration in our lives! And Merissa looked stunningly beautiful!

9w   Like   Reply   1

 **Sheila Young**
Happy Anniversary!

9w   Like   Reply   1

 **Fay Woodlee**
Happy Anniversary!

9w   Like   Reply   1

 **Connie Janowski**
So blessed to be included. Thank you and it's wonderful to watch what God is doing in your lives and in your marriage 

9w   Like   Reply   1

   Write a comment...    

Filed     18-CI-007353   12/19/2018   David L. Nicholson,  Jefferson Circuit Clerk 

EXHIBIT A

Package:000072 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000072 of 000082

Filed

Filed





Travis N Merissa White is with
Connie Janowski and 2 others at
The Waverly Hills Sanatorium.

June 2, 2017 · Louisville, KY ·

The crew has assembled.







Filed

Package :000074 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000074 of 000082

●●○○ T-Mobile LTE   8:04 PM   14%

< Travis N Merissa White

 **Travis N Merissa White** is with **Connie Janowski** and **13 others**.

July 1, 2017 ·

We want to thank everyone who was able to come and make Nina's birthday weekend special. She truly loves being surrounded by friends and family and this weekend, she was with both. Thank you all for making it special. As a parent, we couldn't ask for better people to have in her life and ours.



 8-CI-007352   12/19/2018    David L. Nicholson, Jefferson Circuit Clerk

Filed

EXHIBIT A

Filed



●●○○○ T-Mobile   LTE   7:59 PM   ⏱ ⚙   15% ▭

Travis N Merissa White



**Connie Janowski** checked in to **The Waverly Hills Sanatorium** with **Travis N Merissa White** and **Casey Jordan.**   •••

June 2, 2017 · Louisville, KY · 🌐

## Ready for our haunted tour!





LANDMARK & HISTORICAL PLACE
**The Waverly Hills Sanatorium**   🔖



👍  You and 8 others    1 Comment   1 Share

👍 Like    💬 Comment    ↪ Share

Filed

 18-CI-007...  12/19/2018   David L. Nicholson, Jefferson Circuit Clerk    

EXHIBIT A

Package:000075 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000075 of 000082

Filed          18-CI-007353     12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT "12"

Package:000076 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000076 of 000082

Filed     18-CI-007353    12/19/2018     David L. Nicholson, Jefferson Circuit Clerk

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Lisa Coffey<br>423 Wisteria Avenue<br>Louisville, KY 40222 | From: | Louisville Area Office<br>600 Dr Martin Luther King Jr Pl<br>Suite 268<br>Louisville, KY 40202 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 474-2018-01181 | Richard T. Burgamy,<br>Area Office Director | (502) 582-6744 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Richard T. Burgamy,
Area Office Director

SEP 1 9 2018

(Date Mailed)

Enclosures(s)

cc:    **Connie Janowski**
**Human Resources Director**
**EQUIAN**
**9390 Bunsen Parkway**
**Louisville, KY 40220**

Package:000077 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000077 of 000082

18-CI-007353    12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

**INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC**

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Package:000078 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000078 of 000082

# EXHIBIT "13"

Package:000079 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000079 of 000082

EXHIBIT A

Filed         18-CI-007353   12/19/2018        David L. Nicholson, Jefferson Circuit Clerk

 EQUIAN

August 17, 2018

Lisa Coffey
423 Wisteria Avenue
Louisville, KY, 40222

Re: Employment Termination/Severance/Release Information

Dear Lisa:

Please be advised that your employment with Equian, LLC or its affiliated entities (collectively "Equian") is hereby terminated effective as of August 17, 2018, due to an employment termination program ("Program") applicable to certain Equian business groups. Severance pay, determined based upon the Program or an amount set by applicable employment or severance agreement, whichever is greater, will be provided to eligible employees who voluntarily sign an agreement that releases Equian and its affiliates from any claims relating to their employment or termination.

Based upon your years of service with Equian and your base pay, your severance pay equals a total amount of $5,192.31. Severance payments will be made in a lump sum once the release becomes effective, and generally seven (7) days after it is signed. The general release is attached. We advise you to review this document with an attorney before signing. Your final pay check, including accrued but unearned PTO, will be issued pursuant to the company's pay schedule and sent separately, unless otherwise required by applicable law.

Any future rehire will impact the severance payment by a pro-rata adjustment to such payment in direct correlation to the number of weeks remaining in the severance period upon the rehire date. For example, if the severance period is ten (10) weeks and you are rehired five (5) weeks after the effective date of your termination, you must return (or not receive) one-half of the Severance Payment to finalize rehire status, subject to a minimum consideration amount as set forth in the general release.

Equian will also make available to you a service program of professional level career management services through at RightChoice, an outcome-based outplacement solution for professionals. You will be provided separately with materials outlining what they provide and how to initiate the service. If you elect to use the RightChoice services, it is your responsibility to contact them directly. By making outplacement services available to you, the Company expressly disclaims any guarantees of employment or offers of employment as a result of utilizing these services.

If you are enrolled in Equian's group health, vision and/or dental insurance, please be advised that your coverage will end on the last day of the month that your employment terminates. If you wish to continue your insurance coverage, you may do so through COBRA. You will receive information regarding your rights under COBRA for insurance continuation in a separate letter from Equian's COBRA administrator, BusinesSolver.

Package:000080 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000080 of 000082

equian.com

EXHIBIT A

Filed          18-CI-007353     12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

**Action needed:** Complete the 2017 audit and compliance testing of the Equian 401(k) plan, any required adjustments/reconciliations, and communication to affected employees, and finally provide a report to the 401(k) Steering Committee.  Provide ongoing updates to the Steering Committee regarding migration to One America.

**Collaboration:** As an HR Director, Lisa needs to demonstrate proactive communication with her peers, particularly the HR Business Partners and the Corporate Controller.  Lisa's tendency is to work independently of her peers and to disregard their input.  One example is in the Job Description project where Lisa disregarded peer input regarding how the information would be gathered, organized, and managed electronically.

**Action needed:** Demonstrate proactive communication/collaboration with HR Directors and demonstrate cooperation in the use of their input/recommendations.

**HR systems:** Lisa's role is intended to provide leadership of the HR technology strategy.  In this capacity, Lisa must demonstrate expertise with HR's systems, particularly the Paylocity system.  Lisa must partner with Finance to lead the discussion about how to optimize the configuration of Paylocity for data collection, reporting, and analytics.  Although Paylocity has offered to bring an expert resource on site to assist the Equian team members in a review of system configuration, Lisa has not followed through on scheduling, planning, or communication of that event.

**Action needed:** Lisa must demonstrate a solid knowledge of Paylocity's capabilities, and configuration requirements.  She must engage the Paylocity team with Equian HR and Payroll for an on-site review and system adjustments toward optimized use of the system, and improved reporting/analytics capabilities.

**Staff development:** Lisa has four direct reports, including one team member who is new to Equian.  It is not apparent that her newest team member has a development plan or is receiving frequent, helpful coaching.  One of Equian's leader competencies – People, requires the following behaviors:

- Provides constructive, timely coaching and feedback to others
- Consistently creates opportunities for team members to stretch and develop themselves
- Actively listens to what others are saying, probes for information to ensure clarity and understanding
- Fosters positive morale and engagement by recognizing and rewarding team efforts and results
- Communicates in a concise, compelling, and collaborative manner

**Action needed:** First and foremost, Lisa must demonstrate that each team member, particularly her newest associate, has an individual development plan and receives frequent coaching, recognition, and encouragement.

Package:000081 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000081 of 000082

Filed          18-CI-007353   12/19/2018          David L. Nicholson, Jefferson Circuit Clerk



If you are enrolled in the Basic Life and AD & D plan offered to you by Equian, upon termination you have the option of converting this plan to an individual plan and pay the premiums for this new plan. Also, if you or your dependents are enrolled in the Supplemental Life or Dependent Life Plans offered through Equian, you have the option to continue these plans through the portability option in your coverage and pay the premiums directly to the carrier. These enrollment forms have been enclosed.

If you participate in the Equian 401(k) Retirement Plan, please contact Sean Miranda, Hilliard Lyons at 502-326-1489 concerning your vested benefits, if any. Please be advised that if you have a vested 401(k) balance of $5,000 or less on the date of your termination you have sixty (60) days to elect a cash payment or a direct rollover to an eligible IRA. If no decision is made after sixty (60) days, the vested balance will automatically be determined to be a cash payment.

Respectfully,

Connie Janowski, HR Director

Package:000082 of 000082

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000082 of 000082

Filed          18-CI-007353   12/19/2018          David L. Nicholson, Jefferson Circuit Clerk

equian.com

EXHIBIT A



David L. Nicholson, Jefferson Circuit Clerk
600 West Jefferson Street
Louisville, KY 40202-4731

CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

Package:000001 of 000082



# KCOJ eFiling Cover Sheet

Case Number: 18-CI-007353

Envelope Number: 1374027

Package Retrieval Number: 137402710025193@00000892613

Service by: Certified Mail

Service Fee:  $ 0.00

Postage Fee: $ 15.13

The attached documents were generated via the Kentucky Court of Justice eFiling system. For more information on eFiling, go to http://courts.ky.gov/efiling.

Presiding Judge: HON. BRIAN EDWARDS (630312)

Package : 000001 of 000082

EXHIBIT A

Generated: 12/19/2018 1:22:52 PM



U.S. POSTAGE >> PITNEY BOWES

ZIP 40202 $ 012.90⁰
02 4W
0000339432 DEC 20 2018



CERTIFIED MAIL

7018 1130 0001 2737 2825

EXHIBIT A